RALPH *v.* STATE

[No. 8, September Term, 1961.]

*Decided October 13, 1961.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Walter H. Moorman,* with whom was *Herbert W. Jorgensen* on the brief, for the appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Leonard T. Kardy, State's Attorney for Montgomery County,* and *James R. Miller, Deputy State's Attorney,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether the extra-judicial confession admitted in evidence over objection was the free and voluntary act of the appellant.

At an early hour in the morning of March 21, 1960, the prosecuting witness was raped at her home in Montgomery County by a man she could not see in the darkness but whom she could describe as having kinky hair, big thick lips and an odor like a Negro. The police were notified promptly; and, as a result of a preliminary investigation, a teletype was sent to the police department of the District of Columbia requesting it to be on the alert for a two-tone green Oldsmobile with a Maryland license operated by a Negro.

On March 26, 1960, at 3:03 a.m., William Ralph (the defendant-appellant) was arrested while sitting in an automobile (answering the teletyped description) parked on a street in the City of Washington. He was removed from the automobile and taken in a police car to a precinct station where he was "booked" at 3:30 a.m.

The accused was questioned intermittently from the time he was booked until 10:55 a.m., when he confessed commission of the rape to Lt. Robert S. Eichelberger (of the district police). At the precinct station he had been interrogated by several officers (including the lieutenant and Officer Edward

D. Merwood) for a period of from forty-five minutes to an hour and a quarter. At 6:10 he was removed to police headquarters, but enroute a stop was made at the living quarters of the accused to verify the address he had given the police. Upon arrival at headquarters at 6:40, the accused was taken to the sex squad room, but was transferred to the identification bureau to be "processed." Lt. Eichelberger resumed talking to the accused in the polygraph room from 7:30 until 10:00. And, after an interval of about thirty minutes, the accused was questioned further until 10:55, when, as stated, the confession was made.

While the accused was in the precinct station, and at a time when he was being questioned by Officer Merwood about assaults on women in general, he was told (as the officer frankly admitted) that "it would be better if he told the truth," but it does not appear why or for what purpose the statement was made or what influence the statement had on the accused.

In the course of the interrogation by Lt. Eichelberger at headquarters, the accused was given two polygraph tests. Before taking the tests he had been told that the tests would not absolutely make him guilty and was further told of a case in which an accused had been released after taking a test. The results of the tests were not disclosed. Nor was it shown what effect the giving of the tests had on the subsequently made confession.

Prior to the confession, the accused had been questioned only as to other recently committed sex offenses and housebreakings and had consistently denied participation in any of them. Not until a few minutes before the accused privately admitted to Lt. Eichelberger that he had committed the rape of the prosecutrix, had he ever been interrogated about this offense. Shortly after the accused had privately admitted the rape, he was confronted with the prosecutrix and the taking of the oral confession was begun. Lt. Eichelberger and Lt. Lloyd M. Whalen (of the county police) who was also present, asked the questions, and as the questions were answered, the prosecutrix by a nod of her head indicated whether the answers were true or false.

Before the confession was admitted in evidence, the defendant testified that when he was being taken into custody and while he was at the precinct station the police had assaulted and otherwise mistreated him by shoving him against an automobile, punching him in the abdomen and knocking him to the floor, striking the side of his head with a telephone book, grabbing the seat of his pants and "carrying" him into the interrogation room, and inflicting a number of abrasions, cuts and scratches on his face and back. In rebuttal, all of the police officers who had participated in the arrest and subsequent interrogations, although stating that they had observed some bruises and scratches on his face and neck, denied the occurrence of any of the assaults related by the defendant and further testified that no threats or force had been used. Four days after the confession had been made, the defendant had "no immediate complaints" when he was examined by the county jail physician. The doctor further testified that the appellant stated that the healed over bruise on his left cheek had been inflicted by his wife two weeks before. And while he complained of an occasional pain in his abdomen (probably caused by the ulcers he said he had) and had told the doctor that he had fainted at the police headquarters in Washington, he did not complain of any brutality, harsh treatment or violence at the hands of the police. In the course of testifying in the trial court, the appellant admitted that when the victim came into the polygraph room he had identified her and had told her he "was sorry [he] did it," though he insisted that he had been directed by Lt. Eichelberger to make the apology when a lady, presently to appear, entered the room.

The defendant was tried and convicted by a three-judge court sitting without a jury and was sentenced to death.

The appellant contends that the extra-judicial confession admitted in evidence over objection was not his free and voluntary act (i) because he had been questioned over a long period of time; (ii) because the confession was procured as the result of an inducement; and (iii) because the confession had been obtained as the result of physical violence on the part of the police.

(i)

The claim that he had been coerced into making the confession by prolonged questioning is without merit. While it is true that the defendant had been in custody of the police approximately eight and one-half hours before he confessed, the record fails to show that he was either physically or mentally exhausted by the interrogations or that the time element had any bearing on his decision to confess. The defendant admitted that the questionings were somewhat sporadic and that there had been periods of respite. And, though he denied it, the record indicates that the defendant had been given some sustenance. It is well settled in this State that lengthy interrogation in and of itself does not make a confession involuntary in the absence of a showing that such interrogation, or other cause violative of the right to due process, had overpowered the will of the accused to resist making a statement that he would not otherwise have made. See *Presley v. State,* 224 Md. 550, 168 A. 2d 510 (1961) ; *Hall v. State,* 223 Md. 158, 162 A. 2d 751 (1960) ; *Merchant v. State,* 217 Md. 61, 141 A. 2d 487 (1958). See also *Driver v. State,* 201 Md. 25, 92 A. 2d 570 (1952) ; *James v. State,* 193 Md. 31, 65 A. 2d 888 (1949). In the instant case, where the defendant apparently remained alert during the entire period of interrogation and there is nothing to indicate that the accused's will to resist had been overcome by the extent of the questioning or otherwise, we think it is evident that the length of time had no bearing on the voluntary character of the confession. Certainly the facts in this case are not comparable to those in *Culombe v. Connecticut,* 367 U. S. 568 (1961).

(ii)

The second contention that the defendant was induced to confess by a statement made by Officer Merwood to the defendant at an early stage of the interrogation, like the first contention, is without substantial merit. The claim is based, without more, on the following question (and the answer thereto) propounded to the officer at the end of his cross-examination by the defendant:

"Q. And you told him [meaning the defendant] it would be better if he told the truth, didn't you? "A. I sure did."

We note that it is difficult, if not impossible, to say with any degree of certainty from the question and answer itself, coming as it did at the very end of the cross-examination of the officer, and wholly out of context with respect to the immediately preceding question—as to assaults against other women—whether the admonition or caution to tell the truth was intended as an inducement or a mere exhortation. The cautionary statement (assuming that is what it was) to tell the truth—made approximately eight hours before the confession was made, cf. *Edwards v. State,* 194 Md. 387, 71 A. 2d 487 (1950)— was not repeated and no further reference to truth-telling was made except in connection with the lie-detector tests; and, since the defendant frankly admitted that he had not been coerced into taking them, these tests appear to be without significance. Whether or not there was an inducement must, in most situations, be deducible from the substance of what was said to the accused and not from the verbiage employed in saying it. See *Merchant v. State, supra,* at p. 69. The appellant relies on *Biscoe v. State,* 67 Md. 6, 8 Atl. 571 (1887); *Watts v. State,* 99 Md. 30, 57 Atl. 542 (1904); *Lubinski v. State,* 180 Md. 1, 22 A. 2d 455 (1941); and *Edwards v. State, supra.* But in each of these cases, particularly *Edwards,* there was something more than a flat statement that "it would be better if he told the truth." We have also had occasion to indicate that a threat or promise should not be implied from the word "better" alone. In *Kier v. State,* 213 Md. 556, 562, 132 A. 2d 494 (1957), we pointed out that "[i]n some contexts, at least, the word 'better' might refer to moral or spiritual rewards" and that "[t]he inner psychological pressure of conscience to tell the truth does not constitute coercion in the legal sense." Furthermore, the principle of the formula prescribed in *Biscoe* for the reception of evidence relating to the admissibility of a confession was to the effect that the court besides finding out whether an inducement had been held out to the accused should also ascertain whether he had been influenced by such inducement in making the confession. There

is nothing in this case, one way or the other, to show what effect the statement had on the defendant. Instead he plainly attributed his making the confession to the alleged acts of physical violence he had received at the hands of the police— the subject of his third and final contention.

(iii)

As to this last contention we are also unable to find that the court erred when it ruled that the confession was admissible. At that point in the trial—when the question of the admissibility of the confession was a mixed one of law and fact—the only duty of the trial court, having first considered the evidence produced on both sides, was to decide whether the *prima facie* proof was such as to establish that the confession was freely and voluntarily made, leaving (in this case tried by the court sitting without a jury) the ultimate determination of whether the confession was in fact voluntary and whether it should be believed to the court as the trier of the facts. *Hall v. State, supra,* at p. 169. See also *Smith v. State,* 189 Md. 596, 56 A. 2d 818 (1948).

The record discloses that the defendant never complained to any one of any brutality, harsh treatment or violence until he took the witness stand at the trial to oppose the admission of the confession. And, in view of the lack of substantial corroboration and his admission to the jail physician that the noticeable bruise on his cheek had been inflicted by his wife, his testimony as to the assaults does not have the ring of truth. Besides, all of the police who had participated in the series of questionings categorically denied that they had used either threats or force to obtain the confession. Under the circumstances, we think the credibility of the conflicting evidence concerning the use of force was a matter for the trial court to decide and, absent a showing of abuse of discretion, is not reviewable. *Jones v. State,* 188 Md. 263, 52 A. 2d 484 (1947). See also *Grammer v. State,* 203 Md. 200, 100 A. 2d 257 (1953), *cert. den.* 347 U. S. 938 (1954).

Since the determination of the voluntary character of an extra-judicial confession is ordinarily within the sound discretion of the trial court, *Grammer v. State* and *Jones v.*

488

*State,* both *supra,* and since we find nothing in the record to indicate an abuse of discretion with respect to the admission of the confession in evidence, there is no reason for us to disturb the ruling of the lower court, and the judgment must therefore be affirmed.

*Judgment affirmed.*