792 So.2d 18 (2001)
STATE of Louisiana
v.
Mary L. TOUPS, a/k/a Mary Billiot.
No. 2000-KA-1944.
Court of Appeal of Louisiana, Fourth Circuit.
May 23, 2001.
*19 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, Counsel for Plaintiff/Appellee.
Kevin V. Boshea, Williams Boshea & Ehle, L.L.C., New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III, and Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.

STATEMENT OF THE CASE
Defendant Mary L. Toups, aka Mary Billiot ("the defendant"), was charged by bill of information on December 7, 1999, with possession of cocaine, a violation of La. R.S. 40:967(C). The defendant pled not guilty at her December 10, 1999 arraignment. The trial court denied the defendant's motion to suppress the evidence on December 22, 1999. At trial on February 9, 2000, a six-member jury, found the defendant guilty as charged. On March 1, 2000, the trial court denied the defendant's motion for new trial and/or post-verdict judgment of acquittal. The defendant waived all legal delays and was sentenced to four years at hard labor, with credit for time served. On May 8, 2000, after being advised of her rights and waiving them, the defendant admitted a prior conviction and was adjudicated a second-felony habitual offender. After the defendant waived all legal delays, the trial court vacated her original sentence and resentenced her to four years at hard labor, with credit for time served. The defendant's motion for appeal was granted on that same date.

FACTS
New Orleans Police Officer Dennis Bush testified that on the evening of October 18, 1999, he and five other officers executed a search warrant at a residence located at 633 N. Scott Street. They were in search of a male known as "Stan." After receiving no response at the front door, Officer Bush entered the "shotgun" residence. Officer Bush testified that the defendant and Stanley Williams ("Williams") were found seated on a sofa in the front living room, facing each other. In another room, police found an elderly male connected to some type of respirator. He was the only other person found in the residence. Two pieces of crack cocaine, three clear glass crack *20 pipes and a razor blade were observed on a coffee table that was positioned directly in front of the sofa on which the defendant and Williams were sitting. Officer Bush identified the crack cocaine and the crack pipes. Officer Bush admitted on cross-examination that he had no knowledge of the defendant, and that Williams had been residing there for a period of months. He further acknowledged that even though he arrested the defendant for possession of the contraband, he had not seen her smoking out of one of the pipes. He admitted stating at an earlier hearing that he did not have any evidence to "connect" the defendant to this contraband. Officer Bush then conceded that he did not arrest the defendant for possession of eighteen other pieces of crack cocaine because he did not believe she was "connected" to them. On redirect examination, Officer Bush testified that he observed the residence for approximately one-half hour before executing the search warrant, and he had not seen the defendant enter during that time.
New Orleans Police Detective Jeff Keating observed the defendant and Stanley Williams seated on a sofa when he entered the residence. He confirmed that three crack pipes and two rocks of crack cocaine were seized from the coffee table. Detective Keating said he also seized a plastic container containing sixteen pieces of crack cocaine that was next to Williams, although it was not in "plain view." Three hundred and four dollars was also seized from the same area.
Corey Hall, employed by the New Orleans Police Department Crime Lab, was qualified by stipulation as an expert in the analysis of controlled dangerous substances, specifically cocaine. He tested two pieces of a rock-like substance and three glass tubes related to the defendant's case, and he said that all were positive for cocaine. He also stated that seventeen pieces of rock-like substance in a plastic container tested positive for cocaine, as did a metal tube. Mr. Hall acknowledged on cross examination that it did not appear from a document presented to him by defense counsel that any of the items had been submitted for fingerprint identification.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER ONE
In her first assignment of error, the defendant claims that the evidence is insufficient to support her conviction.
This court set forth the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence *21 most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
The defendant was convicted of possession of cocaine, a violation of La. R.S. 40:967, which makes it unlawful for any person to knowingly or intentionally possess a controlled dangerous substance. To convict for possession of a controlled dangerous substance, the State must prove that the defendant knowingly possessed it. State v. Handy, XXXX-XXXX, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 103, 104; State v. Lewis, 98-2575, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025, 1027. Guilty knowledge is an essential element of the offense of possession of a controlled dangerous substance. State v. Ricard, 98-2278, p. 7, 99-0424 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397, writ denied, XXXX-XXXX (La.12/8/00), 775 So.2d 1078. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. State v. Robinson, 99-2236, p. 5 (La.App. 4 Cir. 11/29/00), 772 So.2d 966, 970. "A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it." State v. Booth, 98-2065, p. 5 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 742. However, mere presence in an area where drugs are found is insufficient to establish constructive possession. State v. Walker, 99-1957, p. 3 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130, 1134. Factors to be considered in determining whether a defendant exercised dominion and control over drugs are: the defendant's knowledge that illegal drugs were present in the area; the defendant's relationship with the person in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's proximity to the drugs; and evidence that the area was being frequented by drug users. State v. Holmes, 99-0898, p. 5 (La.App. 4 Cir. 6/27/01), 791 So.2d 669, 678; State v. Mitchell, 97-2774, p. 12, 98-1128, 98-1129 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328.
The defendant cites State v. Bell, 566 So.2d 959 (La.1990), where police approached a vehicle to request that the occupants, the driver and his passenger, turn down music blaring from the radio. One officer noticed a distinctively wrapped package, containing what was later determined *22 to be cocaine, among some cassette tapes in a plastic console between the front seats. Both men were convicted of attempted possession of cocaine, which convictions were affirmed by this court. There had been no evidence presented that the passenger had any other drugs in his possession or on his person, that he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. The court also noted that the vehicle was parked only two doors from the driver's residence. The Louisiana Supreme Court found that, based on the passenger's mere presence in the car close to the sealed package, "even assuming he was aware of the contents," a rational trier of fact could not have concluded that the passenger exercised dominion and control over the package, or that he willfully and knowingly shared the right to control it with the driver.
In State v. Jackson, 557 So.2d 1034 (La. App. 4 Cir.1990), an individual named Steele threw down drugs at the sight of police, and ran into his apartment. Police followed, and saw the defendant Jackson standing at homemade bar on which were displayed a glass pipe with cocaine residue, another pipe, a mirror with trace amounts of cocaine on it, a razor blade with traces of cocaine on it, test tubes, glasses, and a bag containing a material used to cut or dilute cocaine. This court held that because there was no indication that the residue-containing pipe was warm, that the defendant's fingerprints were on any of the items, that the defendant [her blood] tested positive for the presence of cocaine, or that the defendant was anything more than a guest in the apartment, the evidence was insufficient to establish that the defendant exercised dominion and control over the objects which had cocaine residue in or on them.
In State v. Harris, 585 So.2d 649 (La. App. 4 Cir.1991), police executing a search warrant at an apartment rented by the defendant's brother found the defendant and another individual seated at a kitchen table on top of which were a plastic bag of cocaine, a cigarette pack containing fifty-two marijuana cigarettes, two plates with cocaine residue on them, a scale, some cash, and several other items which an expert testified were used to free-base cocaine. The defendant's brother was standing at the kitchen sink free-basing cocaine. This court found that the evidence was sufficient to support a finding that the defendant possessed the cocaine and marijuana.
In State v. Kingsmill, 514 So.2d 599 (La.App. 4 Cir.1987), police stopped a vehicle containing four men, and the front seat passenger stepped out and dropped a marijuana cigarette. A large plastic bag containing marijuana was found on the front floorboard near the passenger seat. All four men were arrested for possession of marijuana. During a subsequent search of the vehicle, an open cardboard box was found in the middle of the rear seat, containing a scale and some other drug paraphernalia, as well as a plastic bag with two smaller bags of cocaine inside. The four men were then arrested for possession of cocaine. Police testified that one defendant informed them that all four had pooled their money to purchase the marijuana and cocaine. This court found that the evidence was sufficient to support a finding that the two defendants appealing their convictions for possession of cocaine, the front seat passenger and one rear seat passenger, had exerted dominion and control over the cocaine.
In the instant case, it is undisputed that the target of the narcotics investigation was Stanley Williams, the known resident of the premises. Williams was the *23 suspected drug dealer, and seventeen pieces of crack cocaine were found in a plastic container next to him. All of the evidence points to Williams having dominion and control over not only those seventeen pieces of cocaine in the plastic container, but also the two pieces and the three crack pipes on the coffee table. There was no evidence to suggest that the defendant lived in the residence. There was no evidence as to her relationship with Williams. While the two pieces of crack cocaine and three crack pipes were on the coffee table directly in front of the sofa on which the defendant and Williams were sitting, and the defendant had been inside of the residence for at least thirty minutes before police entered, there was no direct evidence that anyone in the residence had been smoking crack cocaine. There was no evidence of smoke, an unusual odor, or warm crack pipes. Nor was there evidence that any means of combusting crack cocaine was on the coffee table, such as matches or a cigarette lighter. There was no evidence that the defendant purchased one or both of the two rocks found on the coffee table, thus gaining dominion and control over one or both, and then she decided to linger and socialize with Williams. Considering the evidence adduced at trial, one can only speculate as to what the defendant was doing in the residence. She could have been a non-drug using member of a neighborhood church proselytizing defendant or an unrepentant crack addict preparing to prostitute herself in exchange for a rock of crack cocaine. While any rational trier of fact could have found that the defendant had knowledge of the cocaine and crack pipes on the coffee table, there was no evidence from which any rational trier of fact could have concluded beyond a reasonable doubt that the contraband was subject to the defendant's dominion and control at the point when police entered. Nor is there any evidence from which it could be concluded beyond a reasonable doubt that the defendant specifically intended to gain dominion and control over any cocaine or cocaine-tainted contraband and did or omitted to do an act toward the accomplishing of that object so as to constitute the crime of attempted possession of cocaine.
There is merit to this assignment of error. Consequently, the defendant's conviction and sentence are hereby vacated.

ASSIGNMENT OF ERROR NUMBER TWO
We pretermit any discussion regarding this assignment of error, as it is rendered moot by our discussion of assignment of error number one.

ASSIGNMENT OF ERROR NUMBERS THREE AND FOUR
We pretermit any discussion regarding these assignments of error, as it is rendered moot by our discussion of assignment of error number one.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are hereby vacated.
REVERSED; CONVICTION AND SENTENCE VACATED.