785 A.2d 790

**Joseph Jermaine PRINGLE**

v.

**STATE of Maryland.**

**No. 705, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 28, 2001.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Jason F. Trumpbour, Staff Atty., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before JAMES R. EYLER, SONNER, and JAMES S. GETTY, (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

Appellant, Joseph Jermaine Pringle, was convicted by a jury in the Circuit Court for Baltimore County of possession with intent to distribute cocaine and possession of cocaine. Finding no error, we shall affirm the convictions.

## Background

In the early morning of August 7, 1999, Officer Jeffrey Snyder, a Baltimore County police officer, conducted a routine traffic stop of a Nissan Maxima traveling on High Falcon Road. The vehicle was speeding, and the driver was not wearing a seat belt. Officer Snyder asked the driver for his license and registration, and the driver, Donte Partlow, complied with the request. Accompanying Partlow in the car were appellant, sitting in the front passenger seat, and Otis Smith, sitting in the backseat.

When Partlow opened the glove compartment to retrieve the vehicle registration, Officer Snyder noticed "a large amount of money rolled up." Officer Snyder did not inquire about the money in the glove compartment, but took the license and registration and checked the Maryland Motor Vehicle Administration computer system for any outstanding violations. After the computer check did not reveal any violations, Officer Snyder issued an oral warning to Partlow, who was standing outside the car. At this time, a second police car arrived and parked directly behind Officer Snyder's car. Officer Snyder then inquired of Partlow whether he had

"any drugs, weapons, [or] narcotics in the vehicle." Partlow said he did not. Officer Snyder then asked whether he could search the vehicle. Partlow consented to the search, and Officer Snyder asked appellant and Smith to step out of the vehicle. After frisking them, Officer Snyder asked all three men to be seated on the sidewalk curb. In the search, Officer Snyder seized $763.00 from the glove compartment and five plastic baggies of cocaine from the backseat. At the hearing on appellant's motion for suppression, Officer Snyder testified as follows, as to the discovery of the cocaine:

[DEFENSE COUNSEL]: And you recovered some suspected narcotics?

[OFFICER Snyder]: Yes.

[Q.]: And they were recovered from inside an armrest that was located in the back seat?

[A.]: Yes.

[Q.]: Did you have—did you have to lift the armrest to get to those drugs?

[A.]: The back rest was up. The seat is flat. The armrest goes up and down. It was in the up position. I pushed it down and the drugs were subsequently there.

[Q.]: Okay. So, the back rest was actually in an upright position?

[A.]: Yes.

[Q.]: And the drugs were actually found sandwiched between the armrest and the back seat of the car?

[A.]: Correct.

[Q.]: And you hadn't seen these drugs when you initially approached the car?

[A.]: Correct.

[Q.]: And you shined your light inside and the first time you noticed the drugs was when all three individuals were sitting on the curb, correct?

[A.] Correct.

Officer Snyder questioned the three men as to the ownership of the drugs and money. He advised all three passengers

of the car that, unless he knew who possessed the drugs, "you are all going to get arrested." None of the passengers offered any information as to the ownership of the drugs or the money. Officer Snyder, with the assistance of the other officer at the scene, arrested the three men and transported them to the police station.

A few hours later, Officer Snyder met with appellant and, following a waiver of his *Miranda*[1] rights, procured a written confession. Appellant said that the cocaine belonged to him and that he and his friends were on their way to a party where he either intended to sell the cocaine or "use it for sex." Appellant went on to say that Partlow and Smith did not know about the drugs.

At trial, Officer Snyder testified, and his testimony was similar to that given at the suppression hearing. Irwin Litopsky, a forensic chemist, also testified and stated that the baggies discovered by Officer Snyder contained .7 grams of cocaine. Detective Frank Massoni, an expert in controlled substances, testified that the drugs were intended to be distributed.

## Discussion

### 1.

Appellant contends that the circuit court erred in permitting Detective Massoni to express an expert opinion. The following colloquy is relevant:

[Prosecutor]: Detective, based upon your expertise in the area of drug distribution, packaging and recognition, do you have an opinion, based upon that expertise, within a reasonable degree of scientific certainty, as to whether the defendant intended to distribute the cocaine that is enclosed in those five zip lock baggies?

[Defense Counsel]: Object.

The Court: Overruled.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[Prosecutor]: Do you in fact have an opinion?

[Witness]: My opinion is that the drugs that were here were going to be distributed in some form or fashion, either to regain money or to be used for sex.

[Prosecutor]: And how is it you come to that opinion, officer?

[Witness]: Based on the statement that I have before me and the fact that, I mean, we have got five baggies and they are packaged individually, which is the way they are usually packaged for resale, generally twenty dollar bags.

The statement referred to was a statement by appellant that he was going to a party to sell the drugs or exchange them for sex.

Appellant contends that the evidence was inadmissible under Rule 5–704(b) because it constituted an opinion as to appellant's mental state at the time of his arrest. Additionally, according to appellant, the evidence violated the rule that one witness cannot comment on the credibility of another witness, in this case, appellant. We disagree.

The witness never opined as to appellant's state of mind or his credibility. The witness opined that "the drugs were going to be distributed" with no reference to appellant's intent or credibility.

Appellant's reliance on *Hartless v. State,* 327 Md. 558, 611 A.2d 581 (1992), is misplaced. The expert opinion in *Hartless* is distinguishable from Detective Massoni's testimony. There, the expert explicitly alluded to the defendant's state of mind, writing in a report, "it is my opinion that David Hartless did not intend to murder the victim ...". *Hartless,* 327 Md. at 572–73, 611 A.2d 581. Contrary to appellant's contentions, Detective Massoni did not explicitly or implicitly testify that appellant intended to distribute drugs. Rather, Detective Massoni's opinion related to the quantity and packaging of the drugs that were contained in five zip lock baggies each containing similar amounts of cocaine. The substance of Detec-

tive Massoni's testimony was consistent with his area of expertise in drug distribution, packaging, and recognition.

The case of *Bohnert v. State*, 312 Md. 266, 539 A.2d 657 (1988), upon which appellant relies, is also distinguishable from the instant case. After being properly qualified, the expert testified that the victim was abused, basing her opinion solely on the results of questioning the victim; no other objective medical tests or medically recognized syndromes were utilized. *Bohnert*, 312 Md. at 276, 539 A.2d 657. In effect, the expert was testifying to the credibility of the victim, the key witness in the case. The Court recognized, "[i]n a criminal case tried before a jury, a fundamental principle is that the credibility of a witness and weight to be accorded the witness' testimony are solely within the province of the jury." *Id.* at 277, 539 A.2d 657 (citing *Battle v. State*, 287 Md. 675, 685, 414 A.2d 1266 (1980)).

In the instant case, appellant did not testify. The jury had no reason to weigh the testimony and credibility of appellant. Even if appellant had testified, Detective Massoni's remarks would have had a different consequence than the remarks in *Bohnert*. Detective Massoni's statement that the drugs were going to be distributed "either to regain money or to be used for sex" was based on his review of appellant's written statement. The mere repetition of appellant's statement was not a judgment of appellant's credibility. In contrast to *Bohnert*, Detective Massoni based his expert opinion on several factors, including the packaging of the drugs, appellant's statement, and his expertise in drug distribution, packaging and recognition. Similar to our findings in *Wilson v. State*, 136 Md.App. 27, 764 A.2d 284 (2000), Detective Massoni's expert opinion would not impinge on the jury's function to weigh credibility. *Wilson*, 136 Md.App. at 55–68, 764 A.2d 284 (rejecting the argument that four doctors' expert opinions were inadmissible comments on credibility).

## 2.

Appellant contends that the circuit court erred in denying his motion to suppress his statement to a police officer. In

support of that contention, he argues that the statement was (1) the fruit of an illegal arrest, and (2) the result of an improper inducement.

## Probable Cause

The United States Supreme Court instructs us that "the usual traffic stop is more analogous to a so-called 'Terry stop,' . . . than to a formal arrest." *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also Livingston v. State,* 317 Md. 408, 411, 564 A.2d 414 (1989). "Therefore, stopping a vehicle for a speeding [or seat belt] violation and detaining its occupants does not constitute a custodial arrest." *Livingston v. State,* 317 Md. 408, 412, 564 A.2d 414 (1989) (citing *Colorado v. Bannister,* 449 U.S. 1, 3, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980)). In the instant case, the speeding and seat belt violations constituted a valid reason for stopping the vehicle in which appellant was a passenger, and the stop shall not be "rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (quoting *United States v. Robinson,* 414 U.S. 218, 221, n. 1, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

Our inquiry, similar to that in *Doering v. State,* 313 Md. 384, 545 A.2d 1281 (1988), is whether Officer Snyder, after making a legal traffic stop and conducting a legal search of the vehicle, had probable cause to believe that a felony had been committed and that appellant had been involved in the commission of that felony. *Doering,* 313 Md. at 403, 545 A.2d 1281. Clearly, upon finding the cocaine, Officer Snyder had probable cause to believe a felony had been committed, specifically, possession of a controlled dangerous substance. The present question is whether Officer Snyder had probable cause to believe appellant, at the time of the arrest, was in possession of the controlled dangerous substance.

"The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less

evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Id.; see also Collins v. State,* 322 Md. 675, 680, 589 A.2d 479 (1991); *Sterling v. State,* 248 Md. 240, 245, 235 A.2d 711 (1967); *Edwardsen v. State,* 243 Md. 131, 136, 220 A.2d 547 (1966). The United States Supreme Court explained this nontechnical conception in *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949):

> Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*See Doering,* 313 Md. at 403, 545 A.2d 1281.

In the instant case, during the hearing on appellant's motion to suppress, defense counsel argued that there was no basis upon which to infer appellant had knowledge of the drugs. The following exchange occurred.

> The Court: Well, I think one reason they may know they are there is because he placed them there. Within an arm's reach. That's a reasonable assumption.

> [Defense Counsel]: Again, your Honor, ...

> The Court: I am thinking only on the fact that they were in arm's reach in the way he was seated. Especially when they were not secreted. They were just basically placed back there and hidden by the armrest. That was the information that [the officer] had before he made the arrest.

> [Defense Counsel]: I would argue, Your Honor, that the drugs are secreted under those circumstances. [The officer] can't see them. The armrest is certainly placed up there for some purpose.

The Court: To hide them.

[Defense counsel]: To hide them.

The Court: From the police.

[Defense counsel]: Exactly.

The Court: Well, he didn't do a very good job. He didn't have much time.

The trial court concluded:

Upon the search drugs were found within an arm's reach of [Pringle], not in a secretive place or in a locked place. As well as put the armrest back up [sic]. The other factor that was not argued is the fact that there was money in front which you have money in front, drugs in the back, both in arm's reach of this particular Defendant, I think the officer had probable cause to make the arrest as he did.

The trial court did not cite authority for its "arm's reach" standard, but we presume it was derived from the application of the *Folk* test to contraband found within automobiles. The *Folk* test, announced by this Court in *Folk v. State,* 11 Md.App. 508, 275 A.2d 184 (1971), consists of four factors. The factors are:

1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Folk,* 11 Md.App. at 518, 275 A.2d 184. *See also Moye v. State,* 139 Md.App. 538, 549–50, 776 A.2d 120 (2001); *West v. State,* 137 Md.App. 314, 357–58, 768 A.2d 150 (2001); *Herbert v. State,* 136 Md.App. 458, 465–66, 766 A.2d 190 (2001); *Veney v. State,* 130 Md.App. 135, 143–44, 744 A.2d 1094 (2000); *In Re Nahif A.,* 123 Md.App. 193, 209, 717 A.2d 393 (1998); *Hall v. State,* 119 Md.App. 377, 394, 705 A.2d 50 (1998); *Colin v. State,* 101 Md.App. 395, 406, 646 A.2d 1095 (1994).

The *Folk* test is a useful tool for determining whether someone exercises actual or constructive dominion or control over contraband, but it is not a bright line rule that permits law enforcement officials and trial courts to find joint possession if the facts of a case satisfy any one of the four factors. *Folk*, like the instant case, was an automobile case, and, when this Court discussed the "proximity" factor in *Folk*, we stated:

> In the case at bar, the proximity between the appellant and the marihuana could not be closer, short of direct proof that the appellant herself was in exclusive physical possession of the marihuana. *She was one of six occupants in a Valiant automobile and was, therefore, whatever her position in the car, literally within arm's length of every other occupant of that automobile.* The marihuana cigarette being smoked was, at any point in time, within direct physical possession of one of those occupants. Proximity could not be more clearly established.

*Folk*, 11 Md.App. at 518, 275 A.2d 184 (emphasis added).

The *Folk* test was again applied in *Colin v. State*, 101 Md.App. 395, 646 A.2d 1095 (1994), in which this Court said:

> As a passenger, it may be true that Colin did not exercise "control" over the vehicle. Colin was traveling in the same vehicle as the cocaine, however, and that is sufficient to establish "close proximity." Although the cocaine was not in plain view, being secreted away in the door, this factor is also not determinative. . . . Moreover, as Colin was a voluntary passenger, it may be reasonably inferred that he anticipated "the mutual enjoyment of the contraband." Further, from his riding in the vehicle with appellant Heath, it could be reasonably inferred that they wanted to use the drug jointly.

*Colin*, 101 Md.App. at 407, 646 A.2d 1095 (citations omitted).

In *Colin*, we examined all four *Folk* factors and found the "proximity" and "mutual enjoyment" factors were satisfied. *Id.* *Colin* was followed a year later in *Pugh v. State*, 103 Md.App. 624, 652–53, 654 A.2d 888 (1995), a case in which cocaine was found inside the spare tire under the carpeting of

the trunk. *Folk, Colin,* and *Pugh* were all cases in which this Court was tasked to review the sufficiency of the evidence to sustain a possession conviction.

Appellant relies on *Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989), in which the Court dealt with the issue of probable cause. In *Livingston,* the Court held that "the presence of two seeds on the floor in the front of the car, without more, [was] insufficient to inculpate [Wesley Warren] Livingston, a rear seat passenger, for possession of marijuana." *Livingston,* 317 Md. at 413, 564 A.2d 414.

*Livingston* is distinguishable from the case before us. In *Livingston,* there were two marijuana seeds on the front floorboard and the defendant was in the back seat. In the case before us, there were five baggies behind an armrest in the back seat and a substantial amount of cash in the glove compartment located in front of appellant. We see a significant difference between two marijuana seeds and five baggies plus cash. The circumstances were sufficient to constitute probable cause to make an arrest.

### Inducements

The introduction of a criminal defendant's confession is permitted at trial if the confession was, "(1) voluntary under Maryland nonconstitutional law, (2) voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 22 of the Maryland Declaration of Rights, and (3) elicited in conformance with the mandates of *Miranda.*" *Hoey v. State,* 311 Md. 473, 480, 536 A.2d 622 (1988). To overcome a pretrial motion to suppress, the State must establish by a preponderance of the evidence that the confession was freely and voluntarily given, and not a product of improper threats, inducements, or promises. *Winder v. State,* 362 Md. 275, 307, 765 A.2d 97 (2001). "Maryland law demands that confessions 'be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.'" *Reynolds v. State,* 327 Md. 494, 504, 610 A.2d 782 (1992) (quoting *Hillard v. State,* 286 Md. 145, 150, 406 A.2d 415 (1979)).

In the case *sub judice,* appellant relies on nonconstitutional grounds for challenging the voluntariness of his confession. Appellant contends he confessed because of promises by Officer Snyder to release the other occupants of the vehicle. Appellant argues Officer Snyder's statement to the suspects at the arrest scene, that unless he knew who possessed the drugs, "you are all going to get arrested," induced appellant's subsequent confession. Appellant testified at the suppression hearing that Officer Snyder reissued a similar inducement during the police station interrogation. Officer Snyder testified the alleged incident at the police station never occurred, however. The circuit court denied appellant's motion to suppress, finding that the confession was voluntary.

In general, we review the totality of the circumstances surrounding the confession to determine voluntariness. *Reynolds,* 327 Md. at 495, 610 A.2d 782. Relying on *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979), the Court established a two-part test whereby a confession is deemed involuntary and inadmissible, if "(1) a police officer or an agent of the police force promises or implies to a suspect that he or she will be given special consideration from a prosecuting authority or some other form of assistance in exchange for the suspect's confession, and (2) the suspect makes a confession in apparent reliance on the police officer's statement." *Winder,* 362 Md. at 309, 765 A.2d 97. In the instant case, neither prong is satisfied.

Under the first prong, we apply an objective test to determine whether Officer Snyder's statement was a threat, promise, or inducement. "Although a defendant need not point to an express *quid pro quo,* '[a] mere exhortation to tell the truth is not enough to make a statement involuntary.'" *Winder,* 362 Md. at 311, 765 A.2d 97 (quoting *Reynolds,* 327 Md. at 507, 610 A.2d 782). There is a distinction between a permissible exhortation, "much better if you told the story," *Ball v. State,* 347 Md. 156, 174, 699 A.2d 1170 (1997); general recommendation that suspect seek advice, *Reynolds,* 327 Md. at 509, 610 A.2d 782; "get it off your chest," *Bean v. State,* 234

Md. 432, 442, 199 A.2d 773 (1964); "better if [you] told the truth," *Ralph v. State*, 226 Md. 480, 486, 174 A.2d 163 (1961); "the truth hurts no one," *Merchant v. State*, 217 Md. 61, 68, 141 A.2d 487 (1958); "the truth would hurt no one," *Deems v. State*, 127 Md. 624, 630, 96 A. 878 (1916); "I want you to tell me the truth," *Nicholson v. State*, 38 Md. 140, 153 (1873); "no sense in lying," *Clark v. State*, 48 Md.App. 637, 646, 429 A.2d 287 (1981), and an impermissible promise or offer; "produce the narcotics, [and your] wife would not be arrested," *Stokes v. State*, 289 Md. 155, 157, 423 A.2d 552 (1980); "if you are telling me the truth … I will go to bat for you," *Hillard*, 286 Md. at 147, 406 A.2d 415; "it would be better for him to tell the truth, and have no more trouble about it," *Biscoe v. State*, 67 Md. 6, 6, 8 A. 571 (1887). Consistent among the later category, prior to the confession, the suspect is promised something as a consequence of his or her response or silence. In contrast, Officer Snyder's statement communicated that all three suspects were going to be arrested for possession. This statement flowed naturally from the attendant circumstances of finding three suspects within the proximity of the illegal drugs. Officer Snyder subsequently arrested the three suspects, consistent with the import of his statement. Officer Snyder denied telling the three suspects that "if one person is going to be the one who fesses [sic] up tell me now so I can let the other two go." Instead, Officer Snyder sought the truth, stated his intent to arrest the suspects, and carried out the arrests. Absent an express promise, threat, or inducement, we shall not consider the defendant's subjective belief that he or she would benefit by confessing. *Winder*, 362 Md. at 311, 765 A.2d 97. Consequently, we reject appellant's argument that he believed the other suspects would be released from custody if he confessed.

 Assuming *arguendo* that Officer Snyder promised to confer a benefit upon appellant if he confessed, we still affirm the outcome because the second prong necessarily fails. Under the second prong, we determine whether there was a nexus between Officer Snyder's statement and appellant's confession by examining the particular facts and circum-

stances surrounding the confession. *See id.* at 312, 765 A.2d 97. We must "ascertain whether he [appellant] had been influenced by such inducement in making the confession." *Ralph v. State,* 226 Md. 480, 486, 174 A.2d 163 (1961). We shall consider the amount of time elapsed between the alleged inducement and the confession, and any intervening factors, besides the statement, that might have caused the confession. *See Winder,* 362 Md. at 312–13, 765 A.2d 97.

Officer Snyder made the alleged inducement to appellant sometime shortly after 3:16 a.m., however, appellant did not make the confession until 5:30 a.m. At least two hours elapsed generating an issue of attenuation. While no bright line test exists for delineating a proper time frame, in *Ralph,* the court held that an alleged inducement made eight hours before the confession was too attenuated, while in *Stokes,* the court held a confession made in direct response to an inducement was sufficiently related. *Ralph,* 226 Md. at 486, 174 A.2d 163; *Stokes,* 289 Md. at 157–58, 423 A.2d 552. During the passage of two hours, appellant's lack of urgency in responding to Officer Snyder's statement diminishes the alleged impact. The timing factor alone would not dispose of the issue; consequently, we address the intervening considerations.

Appellant's argument that he confessed so his friends would go free is inconsistent with the sequence of events. All three suspects, including appellant, were arrested at the scene prior to their transfer to the police station and appellant's confession. Our focus is only on the alleged inducement at the scene because the trial court rejected appellant's claim of a subsequent inducement at the police station. The alleged inducement at the scene consists of a single statement, "you are all going to get arrested." Appellant's argument fails because he and his friends had already been arrested when he later made the oral and written confession. Appellant's transfer from the crime scene to the police station also disrupted the nexus between the alleged inducement and confession. Thus, following the arrest, no benefit could be conferred and any influence from Officer Snyder's statement had seriously dissipated.

Although we reach our decision on different grounds, it is unsettled whether a promise to . benefit a friend justifies finding the subsequent confession involuntary. The Court in *Stokes,* refused to consider whether kinship or what degree of closeness is required between the defendant and third party. *Stokes,* 289 Md. at 160 n. 2, 423 A.2d 552 (finding that a promise to benefit defendant's wife was an inducement). In *Finke,* however, the Court found no degree of closeness, stating that "the record contains nothing to indicate that appellant actually enjoys a particularly close relationship with the child, and the nature of their kinship does not imply such a closeness." *Finke v. State,* 56 Md.App. 450, 485, 468 A.2d 353 (1983) (defendant and the third party were first cousins). *Cf. Bellamy v. State,* 50 Md.App. 65, 77–78, 435 A.2d 821 (1981) (defendant's confession induced by promise to benefit fiancee was found involuntary); *Jarrell v. State,* 36 Md.App. 371, 373 A.2d 975 (1977)(consenting to search based on promise to release sick friend was found involuntary). We need not decide this issue.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

Dissenting opinion by SONNER, Judge.

I concur with the bottom line holding on Pringle's first issue. Although I believe the admission of the testimony was wrong, the error was not preserved. I must respectfully, but emphatically, dissent on the second issue. The majority, in finding that Officer Snyder had probable cause to arrest Pringle, and in affirming this conviction, has promulgated dangerous precedent that ignores developed law and guides law enforcement to act against the grain of due process and ethical police procedures.

First, as to the dissent: When Officer Snyder discovered contraband secreted in the back seat armrest of the car in which Pringle was riding, he was in doubt as to whom the drugs belonged and whom he could arrest. He did not

conclude that the drugs belonged jointly to all three passengers, including the driver of the car, the back seat passenger, and Pringle, who sat in the front passenger seat. Reacting to his doubt, the officer threatened to arrest all three men, unless one of them admitted ownership of the forbidden drugs. When no one did so, Officer Snyder, with his doubt still unresolved, arrested all three. Now, the majority sanctions such police work, concluding that Officer Snyder had probable cause to arrest all three men to squeeze a confession of ownership from one of them. I am unable to go along with what I believe is not only a stretch to affirm a conviction, but an analysis that ignores a clear line of cases from the Court of Appeals spanning three decades.

Professors Charles Whitebread and Ronald Stevens wrote, in 1972, that constructive possession of narcotics prosecutions "have engendered such conceptual confusion and given rise to so many conflicting rulings 'that for the practitioner the problems are difficult to understand and apparently for the courts impossible to master.'" Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To have and Have Not,* 58 Va. L.Rev. 751 (1972) (quoting *United States v. Holland,* 445 F.2d 701, 704 n. 1 (D.C.Cir.1971) (Tamm, J., concurring)). This Court has compounded the confusion, at times, by diverging from the precedent developed by the Court of Appeals in joint possession cases, which can lead "to contrary conclusions in cases with similar facts." *See* Dana L. Weinstein, *The Maryland Survey: 1996–1997: Recent Decisions: The Maryland Court of Appeals,* 57 Md. L.Rev. 795, 813 (1998). With the majority opinion, I believe, this Court again fails to heed and follow controlling law from the Court of Appeals.

In 1971, in *Folk v. State,* 11 Md.App. 508, 275 A.2d 184, Judge Moylan reviewed Maryland's previous joint possession cases and articulated a four-part test that reflected the "common thread" running through those cases. One of the enumerated factors was the proximity between the accused and

the contraband. *See id.* at 518, 275 A.2d 184.[1] This Court affirmed Lillie Mae Folk's conviction because there was sufficient evidence to convict all six occupants of the car for possession of marijuana. The discovered drugs were "within arm's length" of all of the passengers, satisfying the proximity factor. *Id.* But the evidence did not stop with mere proximity, as Judge Moylan explained:

> Nor would there be, under the circumstances of this case, any difficulty in drawing a reasonable inference that the marihuana was within the view, or otherwise within the knowledge, of the appellant. In a darkened car in a dark field, the glow from a lighted cigarette is clearly visible within that maximum radius of four to five feet between the glow and the viewer. Knowledge of the presence of marihuana would be imparted even more emphatically by the sense of smell, in a situation where the cloud of smoke and the peculiar pungent odor filled the interior of a tightly-closed automobile. Neither would the inference be unreasonable that some conversation transpired among the six persons huddled there in the dark dealing with what the cigarette and the fumes were all about. It would, indeed, be unreasonable not to infer knowledge of the marihuana on the part of the appellant.

*Id.* This Court has returned to the four-part test articulated in *Folk* several times. *See, e.g., Pugh v. State,* 103 Md.App. 624, 654 A.2d 888 (1995); *Colin v. State,* 101 Md.App. 395, 646 A.2d 1095 (1994); and the six other cases cited in the majority opinion on page 304.

Three years after *Folk,* however, in *Garrison v. State,* 272 Md. 123, 321 A.2d 767, (1974), the Court of Appeals overturned a conviction involving joint possession, after we had affirmed it

---

1. The other enumerated factors were whether (1) "the contraband was within the view or otherwise within the knowledge of the defendant;" (2) the defendant exercised ownership or some other kind of possessory interest in the location where the drugs were found; and (3) whether the circumstances indicated that "the defendant was participating with others in the mutual use and enjoyment of the contraband." *Folk,* 11 Md.App. at 518, 275 A.2d 184.

in an unreported opinion. Judge O'Donnell, writing for a unanimous Court, conducted his own extensive review of Maryland joint possession cases. Without discussing *Folk* or applying any four-part test, Judge O'Donnell stated that the proper determination was whether the accused exercised some "dominion or control," either jointly or solely, over the contraband. *Id.* at 142, 321 A.2d 767. The Court then concluded that the evidence was insufficient to show that Shirley Garrison jointly possessed the heroin seized from the apartment that she shared with her husband. Since *Garrison*, the Court of Appeals has consistently ignored the *Folk* four-part test, so often applied by this Court, and, instead, has preserved Judge O'Donnell's approach of asking whether the accused exercised some dominion or control over the contraband.[2]

The next significant Court of Appeals ruling on joint possession was *State v. Leach*, 296 Md. 591, 463 A.2d 872 (1983), in which the accused occupied an apartment with his brother and had been observed by police going in and out of the building several times. A search of the apartment produced evidence of a commercial narcotics operation, including two scales, cutting tools, and individually wrapped packets of PCP. In spite of a strong dissent by Chief Judge Robert Murphy, the majority found insufficient evidence that Leach had exercised "actual or constructive dominion or control" over the illegal drugs, even though it was clear that he had some proprietary interest in the apartment and some of the incriminating evidence turned up in his bedroom. *Id.* at 595, 463 A.2d 872. Neither Judge Rodowsky, writing for the six-judge majority, nor Judge Murphy, in dissent, mentioned the *Folk* test.

---

**2.** Courts in other jurisdictions also have focused on the accused's dominion or control of the contraband, and have rejected proximity as a conclusive factor in joint possession cases. *See, e.g., United States v. Blue*, 957 F.2d 106 (4th Cir.1992) ("The mere proximity of [contraband] [ ] to a passenger in a car goes only to its accessibility, not to the dominion or control which must be proved to establish possession."); *Reid v. State*, 212 Ga.App. 787, 442 S.E.2d 852 (1994); *State v. Drake*, 288 Ill.App.3d 963, 225 Ill.Dec. 552, 683 N.E.2d 1215 (1997); *State v. Toups*, 792 So.2d 18 (La.Ct.App.2001).

Next, in *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988), the Court of Appeals meaningfully expanded the *Garrison* analysis when it held that criminal possession included the element of knowledge. It clarified that, along with showing dominion or control, "[t]he accused, in order to be found guilty, must know of both the presence and the general character or illicit nature" of the item possessed. *Id.* at 651, 547 A.2d 1041. The Court reversed Leonard Dawkins's conviction, even though police observed him enter an apartment carrying a tote bag, in which, twenty minutes later, they found narcotics paraphernalia and heroin residue. Judge Eldridge, writing for a unanimous Court, never mentioned the *Folk* four-part test, which presumably Dawkins satisfied by carrying the tote bag.

In three important cases since *Dawkins,* the Court of Appeals has ignored the *Folk* test. In *Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989), a state trooper, who stopped a vehicle for speeding, was found to have lacked probable cause to arrest a back seat passenger for possession of two marijuana seeds discovered on the front floor of the car. The Court wrote, in reversing the conviction and finding a lack of probable cause: "Merely sitting in the backseat of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car." *Id.* at 415–16, 564 A.2d 414. Judge Blackwell, writing for a unanimous Court, cited *Garrison, Leach,* and *Dawkins* for their discussion of what it means to knowingly exercise dominion and control.[3]

In *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997), the Court of Appeals reversed this Court's unreported opinion sustaining a possession conviction, in which we found that

---

3. The Court applied *Garrison* and *Leach,* which questioned the sufficiency of the evidence, to *Livingston,* which questioned the existence of probable cause to arrest, thereby conflating the appropriate analysis in both types of cases. Of course, "probable cause requires less evidence than that which is essential to sustain a conviction." *Collins v. State,* 322 Md. 675, 681, 589 A.2d 479 (1991).

"appellant's presence in a room where marijuana had recently been smoked l[ed] to the inference that appellant had himself smoked marijuana." *Id.* at 457, 697 A.2d 462. Judge Raker, writing for a unanimous Court, cited *Garrison* and *Leach* to explain possession. The Court clarified:

> Possession requires more than being in the presence of other persons having possession; it requires the exercise of dominion or control over the thing allegedly possessed. Without more, [Richard Taylor's] presence in the room where marijuana had recently been smoked does not support a rational inference that [he] had possessed marijuana. Furthermore, the existence of smoke in a room occupied by five people does not alone justify the inference that [Taylor] was engaged in the mutual use or enjoyment of the contraband.

*Id.* at 459, 697 A.2d 462 (citations omitted). While the Court acknowledged that Taylor's proximity to the concealed contraband created a suspicion of guilt, it stated emphatically that "[m]ere proximity ... is insufficient to support a finding of possession." *Id.* at 460, 697 A.2d 462 (quoting *Murray v. United States,* 403 F.2d 694, 696 (9th Cir.1968)). Once again, the Court did not mention the *Folk* test in reversing the conviction.

In the most recent case of *White v. State,* 363 Md. 150, 767 A.2d 855 (2001), the Court of Appeals, per Judge Harrell, reversed this Court for having sustained a conviction after applying the *Folk* test. Defendant White had challenged the sufficiency of the evidence on his convictions for possession of cocaine and related charges. Recognizing that the Office of the Attorney General had fashioned its argument to demonstrate compliance with the *Folk* test, the Court of Appeals, nevertheless, did not apply *Folk.* It stayed the course set by its precedents and focused on whether White knew about the drugs found in the trunk of his car and whether he exercised control over them. After reviewing the record in a light most favorable to the State, the Court found the evidence insufficient as a matter of law. Although the Court did not reject

the *Folk* test outright, referencing *Taylor*, it again denounced proximity as a litmus test for determining possession.

Mindful of *Garrison* and its progeny, I believe the majority has stopped far short of considering whether Pringle, in any way, knowingly exercised dominion or control over the secreted contraband, and has resorted instead to "speculation or conjecture." *Taylor*, 346 Md. at 459, 697 A.2d 462. Although Pringle, like Folk, may have been within an arm's reach of the drugs, in fact, to expose the drugs, he would have had to stretch his body, maneuver around the back of his seat, and pull down the arm rest. And unlike Folk, Pringle was not sitting in a closed car that emanated the pungent, easily detectable smell of marijuana, which were critical facts in Judge Moylan's analysis sustaining Folk's conviction thirty years ago. Although the majority attaches some significance to the large roll of currency found in the glove compartment, located in front of Pringle's seat, cash, in and of itself, is innocuous and certainly less suspicious than the scales and cutting tools discounted by the Court of Appeals in *Leach*. Further, there was no showing whatsoever that Pringle, as a passenger in the car, had any connection to, or knowledge of, the money found within the glove compartment of someone else's car. *See White*, 363 Md. at 167, 767 A.2d 855.

While the majority recognizes that *Folk* does not provide "a bright line rule that permits law enforcement officials and trial courts to find joint possession if the facts of a case satisfy any one of the four factors," it proceeds to sustain the conviction based only on the "proximity" factor enumerated in *Folk* and to conclude that, because the secreted cocaine was within arm's reach, as the marijuana was in *Folk*, that Pringle was in joint possession. To be sure, the *Folk* test may be useful in organizing the evidence presented in a joint possession case, and it may assist in reaching the conclusion that a particular person did in fact exercise some dominion or control over a prohibited drug. The majority, however, wrongly treats the individual *Folk* factors as litmus tests, in place of the more balanced and more delicate jurisprudence developed by the Court of Appeals in the last three decades.

Next, I would find that the confession, which resulted from an illegal arrest, should be barred as the fruit of a poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). For the majority, of course, there is no tree to purify, and no fruit to be plucked.

Even were the arrest legal and in compliance with the Fourth Amendment, I would bar the admission of the confession because it was improperly induced. The majority, in its discussion of the fundamental law governing the admission of confessions, has it right: confessions are permitted at trial if they conform with the Maryland Declaration of Rights, Maryland non-constitutional law, and the voluntariness requirement of the Due Process Clause of the *U.S. Constitution.* Further, the confession must conform with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and those cases interpreting it. I depart from the majority's opinion, however, that the confession here was voluntary. The admitted threat by the police to arrest all the occupants of the car unless someone confessed was "a coercive barnacle[ ] that ... prevent[ed] the [subsequent] expression from being voluntary." *Hillard v. State,* 286 Md. 145, 150, 406 A.2d 415 (1979). The spoken threat, although perhaps not as serious as a threat to arrest a near relative as in *Stokes v. State,* 289 Md. 155, 161, 423 A.2d 552 (1980), was from a due process point of view, equally impermissible.

At common law, courts excluded only confessions that were unreliable. *See* Welsh S. White, *False Confessions and the Constitution: Safeguards Against Untrustworthy Confessions,* 32 Harv. C.R.-C.L.L.Rev. 105, 111–12 (1997). Constitutional due process, as we understand it today, rejects confessions that are untrustworthy and confessions that may be trustworthy, but, nonetheless, are involuntary. *See id.* at 112–13. The tactic of threatening third persons to obtain a confession is likely to produce unreliable and involuntary statements, which are more the product of fear and anxiety than truthful disclosure. Our holding sanctions law enforcement officials to choose from a group, however large, some volunteer to take the fall for friends or relatives. Confessions

so induced would lack the reliability that due process and our developed law commendably demands. Indeed, the majority holding thwarts the wisdom and sensitivity carefully nurtured in our law of criminal procedure.

On the remaining issue, I concur that the so-called expert testimony did not warrant reversal, not because its admission was proper, but because Pringle did not preserve the error of its admission. The prosecutor asked Detective Massoni for an opinion about whether the drugs, which had been separately packaged, were intended to be distributed. The detective, as a qualified expert, could express an opinion as to whether they were or not, and the court properly overruled the defense's objection to that question. But Detective Massoni went further in his answer and said that the drugs were to be distributed "either to regain money or to be used for sex," a conclusion based not upon his expertise, but wholly grounded in the confession that Officer Snyder had extracted from Pringle. The detective asserted, in effect, that he believed Pringle's confession was accurate, an opinion that is barred by *Bohnert v. State,* 312 Md. 266, 278, 539 A.2d 657 (1988) (holding that "[t]estimony from a witness relating to the credibility of another witness is to be rejected as a matter of law.").

The answer was flawed for an additional reason. The detective, by commenting about Pringle's intent, violated Maryland Rule 5–704(b), which prohibits an expert from giving an opinion about a defendant's mental state, when that is an element of the crime charged. The Court of Appeals, in *Hartless v. State,* 327 Md. 558, 611 A.2d 581 (1992), likewise condemned such expert testimony. The majority holds that, because the detective testified about how the drugs were intended to be used, he did not testify explicitly about Pringle's state of mind. Such a distinction is unconvincing, however, because the detective specifically referenced the particular intent expressed in Pringle's confession, not the intent he, as an expert, drew from the packaging of the drugs. So, the answer was doubly inadmissible. Detective Massoni essentially declared: "Pringle told Officer Snyder that his intent was

to exchange the drugs for money or sex, and I believe him!" The detective's expertise did not permit him to garner such a conclusion. He also may have intended to disparage Pringle in the minds of the jurors, which the evocative statement likely accomplished.

Nevertheless, Pringle did not move to strike the detective's objectionable answer. Maryland Rule 4–323 clearly requires contemporary objections to perceived errors so that trial courts can attempt to correct them as they arise. *See Hall v. State,* 119 Md.App. 377, 389, 705 A.2d 50 (1998). Consequently, I would affirm on this issue, but not in a way, as the majority has, that condones what the prosecutor and expert police witness did in this case.