HERSHELL ANTONIO CLARK *v.* STATE OF MARYLAND

[No. 1094, September Term, 1980.]

*Decided May 11, 1981.*

---

· The cause was argued before MORTON, MELVIN and WILNER, JJ.

*Kenneth L. Thompson,* with whom was *George L. Russell, Jr.,* on the brief, for appellant.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Haven Kodeck, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

In a jury trial in the Criminal Court of Baltimore (Hammerman, J., presiding), Hershell Antonio Clark was tried on the charges of second degree rape and burglary and the lesser included offenses of each. Based partially on an incriminatory statement made by appellant and received into evidence over appellant's objection at a suppression hearing, appellant was convicted of second degree rape and burglary. He received a sentence of ten years on the burglary conviction, to run concurrently with 15 years on the rape conviction. The question presented for consideration is whether appellant's inculpatory statement was prompted by improper police inducements thereby rendering its admission into evidence prejudicial error and requiring a reversal of his convictions.

In the early morning hours of March 19, 1980, the victim, Rosalind Hite, was raped in her home. Based on an analysis of fingerprints left on the premises, the appellant was arrested and brought in for questioning. After he was read

his *Miranda* [1] rights and had signed a waiver form, he wrote a detailed statement to the effect that he did have sexual intercourse with the victim on March 19, but that it was with her consent. At trial appellant denied being in her house that evening.

Detective Waters and Officer Kamen, the arresting and interrogating officers, both testified on direct examination at the suppression hearing to the general effect that no promises or threats were made or inducements given to appellant in obtaining the statement. On cross-examination by defense counsel, Detective Waters testified that the following transpired before the statement was made:

> "Q. Well, did you indicate to him whether it would be of any benefit to him to make a statement at that time?
>
> A. Well, if there were other circumstances surrounding the case it certainly would be a benefit to him if he told me the truth.
>
> Q. So, if he told you the truth —
>
> THE COURT: Is that what you told him? Is that what you told him?
>
> THE WITNESS: I'm not sure the exact words or not. I told him if there was any other circumstances I would be able to investigate I certainly would.
>
> THE COURT: Did you mean by that that if he gave you a statement it might shed light on the other circumstances, which you would then investigate?
>
> THE WITNESS: Correct.
>
> THE COURT: And that it might help him or not help him depending on what the circumstances were?
>
> THE WITNESS: I couldn't do anything about the charge he was charged with."

---

1. Miranda v. Arizona, 384 U.S. 436 (1966).

Defense counsel resumed his questioning of Detective Waters:

Q. And you remember saying that to him, that it could be of benefit to him if he told the truth and gave a statement?

A. I told him that there was no sense in him lying to me.

Q. Do you remember using the word 'benefit'?

A. I don't actually."

Cross-examination by defense counsel of Officer Kamen revealed that he had accompanied Detective Waters to serve the arrest warrant on the appellant. He was also present during the questioning of the appellant and when appellant's statement was given. Officer Kamen then testified that Detective Waters told the appellant what she knew about the case and that "she would just like to know the information that he was able to supply in reference to what happened that night." After questioning the officer about when *Miranda* warnings were given, defense counsel elicited the following:

"Q. What if anything was said to Mr. Clark as to how he could benefit by making the statement?

A. To the best of my knowledge I don't think there was anything else said about how it would benefit Mr. Clark in his case because we were not able to tell Court Commissioner whether he should make bail or anything like that if that is what you are speaking of.

Q. Was it said it would possibly be in his best interest, making a true statement?

A. I don't recall.

Q. Did anybody ever say in your presence that Detective Waters is the only one that could help out Hershell Clark?

A. I believe I made a statement like — I didn't advise that she is the only one that would help him.

I stated that if he wanted to, that a statement could be given to go and give that information to Detective —"

The appellant then testified, in response to questions put by defense counsel, that he was led to believe that if he made a truthful statement, he would be helped:

"Q. What happened next?

A. Then Officer — the police officer — he told me — he said, 'You're only wasting my time and you're only wasting her [Detective Waters'] time. She is the only one who can help you.'

. . .

Q. What happened next?

A. Then after that we sat down and she kept asking me to tell her the truth, and I kept telling her I was telling her the truth, and I did go in the house with Granny, and she said, 'Well you got to come up with a better story than that. I can let you go.' And the police officer said, 'Say it again' she stated once again. 'She is the only one who can help. Tell her the truth and then we'll let you go.' He told me she'd let me go. You know, I was scared because I never been interrogated by the police before."

Neither Detective Waters nor Officer Kamen was called back to the stand after appellant testified. The trial judge denied the motion to suppress the statement, noting that he found the testimony of Waters and Kamen more credible than appellant's; and that Waters' alleged inducements were made only after appellant indicated his desire to give a statement.

Appellant's sole contention here is that the confession [2] was induced by improper threats or promises and thus was improperly admitted into evidence. His argument is based

**2.** Although there is some question under the facts as to whether appellant's statement was, strictly speaking, a confession or only an admission,

642

on (1) the alleged statement of Officer Kamen, as testified to by appellant, that Detective Waters "is the only one who can help you"; and (2) Detective Waters' statement to appellant that if there were other facts, those could be investigated for their possible impact on the case.

## I. Officer Kamen's Alleged Statement

It is well settled under Maryland criminal law that for a confession to be admissible into evidence against an accused it must not be the product of force, threats, promises or inducements. *Stokes v. State,* 289 Md. 155 (1980); *Hillard v. State,* 286 Md. 145 (1979). It is equally clear that the burden is on the State to show affirmatively that a confession is voluntarily given and not improperly induced. *Hillard, supra; Abbott v. State,* 231 Md. 462 (1963). Appellant, relying on *Streams v. State,* 238 Md. 278 (1965), argues that by not asking Officer Kamen specifically to rebut appellant's assertion, the State did not meet the burden of proving the voluntariness of appellant's confession.

We do not think the mandate of *Streams* was violated. Officer Kamen testified that he was present or within hearing distance at all times during appellant's interrogation. He testified that no promises, threats, or inducements were made to appellant during this interrogation. Appellant, in subsequent testimony, did not allege any inducements other than the alleged statements made or witnessed by Officer Kamen. On cross-examination Officer Kamen specifically denied making the statement that Detective Waters was the only one who could help appellant. "I didn't advise that she is the only one that would help him. I stated that if he wanted to, that a statement could be given to go and give that information to Detective —." As this Court has pointed out, "there is no magic as to *when* testimony in denial of promises or inducements must be made." *Ponds v.*

it is "significantly incriminating" and, as such, could be admitted into evidence at trial only if the voluntariness test is met. Stewart v. State, 232 Md. 318, 323 (1963).

*State,* 25 Md. App. 162, 166 (1975). *See also Burks v. State,* 1 Md. App. 81 (1967).

There was sufficient anticipatory rebuttal by Officer Kamen in his testimony on cross-examination. The trial judge, confronted by the necessity to resolve the conflicting testimony of appellant and Kamen, chose to believe the latter.

## II. Detective Waters' Statements

Although this State's criminal law principle, which excludes improperly induced statements, is perhaps more extensive than that of our sister states, *see Stokes v. State, supra, Hillard v. State, supra,* we do not hold involuntary a confession motivated from within rather than without. As the Court of Appeals recently stated in *Stokes, supra,* at 161: "A finding that an inducement is impermissible . . . may only result where the challenged statement was produced by **police words or deeds which communicated a threat or promise to the defendant.**" It remains for us to determine whether Detective Waters' statements to appellant were inducements and whether appellant was influenced by such inducements in making the confession.

Detective Waters testified that she told appellant that (1) there was no sense in lying to her; and that (2) other circumstances might be disclosed which could be investigated.[3]

We do not think there was any inducement in Detective Waters' statement that whatever statement appellant made could be investigated. Appellant could not have believed that any investigation of an inculpatory statement so as to

---

**3.** Appellant argued, at oral argument, that Waters' testimony disclosed that she did use the word "benefit" in discussing this "investigation of facts." Appellant points to this testimony:

"Q. Well, did you indicate to him whether it would be of any benefit to him to make a statement at that time?

A. Well, if there were other circumstances surrounding the case it certainly would be a benefit to him if he told me the truth."

However, appellant's interpretation takes the testimony out of context. Waters goes on to testify that she did not remember using the word "benefit."

determine the likelihood of its truth could possibly be beneficial to him. On the contrary, an investigation of an inculpatory statement could lead to other inculpatory evidence supporting its truthfulness.

It is the former statement to the effect that there was no sense in lying which presents a difficult, although not insurmountable, obstacle to the admission of appellant's statement.

It is accepted law in Maryland, as appellant conceded at oral argument, that a mere caution to make a true statement, without more, does not make a subsequent statement inadmissible. The Court of Appeals in *Biscoe v. State,* 67 Md. 6, 9-10 (1887), quoted Judge Pollock in *Reg. v. Baldry,* 2 Den. C.C. 430:

> " 'A simple caution to the accused to tell the truth, if he says anything, the statement may be given in evidence, but where the admonition to speak the truth has been coupled with any expression importing that it would be better for him to do so, it has been held that the confession was not receivable, the objectionable words being that it would be better to speak the truth, because they import that it would be better for him to say something.' "

In *Biscoe, supra,* the Court held a statement to be impermissibly induced where the accused was told that "it would be better for him to tell the truth and have no more trouble about it," even when he was also told that no promises could be made. The Court stated:

> "The prisoner was in the custody of the law, and although pressed, time and again, to make a confession, and pressed too by one in authority, he persisted in denying his guilt, and it was not until he was told that it would be better for him to tell the truth, and have no more trouble about it, that the confession was made. Here there was an inducement, and one, too, of the strongest kind held out to

him . . . It was, in fact, saying to the prisoner, if you will tell me the truth, it will not only be the better for you, but you shall have no more trouble about the matter." 67 Md. 8.

The Court of Appeals also has found improper inducements in the following: a statement to the accused that "it would be possibly better for him if he would make a clean statement, so it would not appear erroneously in the papers . . ." (*Watts v. State,* 99 Md. 30 (1904)); officers' statements that they would "go to bat" for the accused if a statement was made (*Hillard v. State, supra*); a warning to the accused to " 'let it out before [your codefendant] squeals, for if you do not, [the codefendant] will squeal before you, and you will get the worst of it' " (dictum in *Nicholson v. State,* 38 Md. 140, 152-54 (1873)); telling the accused that although he didn't have to give a statement, "it will help you a lot" (dictum in *Lubinski v. State,* 180 Md. 1, 4-6 (1941)).

On the other hand, the Court has held that mere exhortations to tell the truth, and nothing more, are not improper. "I want you to tell the truth" has been held not to be an improper inducement. *Nicholson v. State, supra.* Similarly, in *Deems v. State,* 127 Md. 624 (1916), an officer's questions to the accused of "why [didn't he] tell the truth" and the statement that "the truth would hurt no one" did not render the confession inadmissible. In *Merchant v. State,* 217 Md. 61 (1958), the officer told the appellant, in response to a question, that he did not know if things would go easier if he made a statement and he could make no promises. He added, "the truth hurts no one." The court did not think the generalization could be viewed as a promise of leniency, especially where the accused was told any statement could be used against him. Neither is it an improper inducement for an officer to tell an accused to "get it off his chest." *Bean v. State,* 234 Md. 432 (1964).[4]

---

4. The Court has even held that it is not improper inducement to tell an accused that "it would be better if he [the defendant] told the truth." Ralph v. State, 226 Md. 480, 485-487 (1961), *cert. denied,* 369 U.S. 813 (1962). Although the defendant admitted he had not been coerced into taking the lie detector tests, the Court noted "it is difficult . . . to say . . . whether the

The question before us is whether Detective Waters' statement to appellant that there was "no sense in lying" was a mere exhortation to tell the truth, or whether it does more and implies benefit if the truth is told. We are of the opinion that the statement in the present case does not fall within the category of those condemned in *Biscoe v. State, supra; Nicholson v. State, supra;* and the others. To say that there is no sense in lying is not to imply a benefit in telling the truth. It is a mere exhortation to tell the truth, similar to "I want you to tell me the truth," or "come on, get it off your chest." Appellant may have thought it would be to his advantage to make the statement, but he was not led to believe this by anything Detective Waters or Officer Kamen said.

The confession was properly admitted into evidence and so the conviction must stand.

> *Judgments affirmed; costs to be paid*
> *by appellant.*

---

admonition or caution to tell the truth was intended as an inducement or a mere exhortation. . . . Whether or not there was an inducement must, in most situations, be deducible from the substance of what was said to the accused and not from the verbiage employed in saying it." *Id.* at 486.